**Scott LANDRY, Administrator of the Estate of Robb E. Landry v. DAIRYLAND INSURANCE COMPANY**

[701 A.2d 1035]

July 2, 1997. Plaintiff appeals from a summary judgment ruling that his insurance policy's uninsured motorist provision does not cover intentional harm by an uninsured motorist. We hold that the conduct at issue was not an "accident" under that provision, and accordingly, affirm the decision below.

The parties have stipulated to the following facts. On June 19, 1990, plaintiff and his brother were driving in plaintiff's Chevette, while James Darrow and another man drove in Darrow's van. A dispute arose between the occupants of the two vehicles as they drove on Interstate 89 and then on U.S. Route 2. Darrow pulled to the side of the road and stood beside his vehicle. He then intentionally threw a tire iron at plaintiff's car as it passed; the tire iron struck plaintiff's brother in the head, killing him.

Defendant Dairyland Insurance Company had issued plaintiff an insurance policy that included uninsured motorist coverage, and plaintiff's brother was a covered person under that policy. Darrow had no insurance. Plaintiff, as administrator of his brother's estate, brought this action for compensation under the uninsured motorist provision of his Dairyland policy.

This provision states that Dairyland will "pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury: (1) Sustained by a covered person; and (2) Caused by an accident," where such damages "arise out of the ownership, maintenance, or use of the uninsured motor vehicle."

Plaintiff maintains that Darrow's intentionally throwing the tire iron qualifies as an "accident" under his insurance policy. We disagree. We construe insurance contracts according to their terms and the parties' intent as shown by those terms. *Utica Mut. Ins. Co. v. Central Vt. Ry.*, 133 Vt. 292, 295, 336 A.2d 200, 203 (1975). Since the policy does not define the word "accident," we presume the parties relied on the word's ordinary meaning. We have previously noted that "'Accident'. . . in its common significance means an unexpected happening without intention and design," and held that an injury resulting from a willful act was no accident because the harm had been intended. *Anton v. Fidelity & Casualty Co.*, 117 Vt. 300, 305, 91 A.2d 697, 700 (1952) (considering whether insured's own intentional act fell within terms of his accident policy); see also *Wendell v. Union Mut. Fire Ins. Co.*, 123 Vt. 294, 297, 187 A.2d 331, 332 (1963) (assault and battery not accident under homeowner's insurance policy).

Following this definition, Darrow's throwing the tire iron cannot be characterized as an accident. To the contrary, it is undisputed that he acted purposefully and intended to harm either the vehicle or its passengers. Courts in other jurisdictions have reached the same conclusion in analogous cases. See *Bowen v. Lloyds Underwriters*, 162 N.E.2d 65, 66 (Mass. 1959) (bodily injuries caused by assault and battery not "accidental" under insurance policy); *Petersen v. Croft*, 447 N.W.2d 903, 906-07 (Minn. Ct. App. 1989) (inten-

tionally firing gun at house from uninsured car, unexpectedly killing victim outside, not accident under plaintiff's uninsured motorist policy); *McCarthy v. Motor Vehicle Accident Indem. Corp.*, 224 N.Y.S.2d 909, 915-16 (App. Div. 1962) (one insured motorist's deliberate collision with another, because intentional, not covered by tortfeasor's own accident insurance or plaintiff's uninsured motorist coverage), *aff'd*, 188 N.E.2d 405 (N.Y. 1963); *Murray v. Landenberger*, 215 N.E.2d 412, 415 (Ohio Ct. App. 1966) (because uninsured motorist intentionally and maliciously ran into plaintiff's vehicle with his own, not an accident).

Plaintiff further argues that 23 V.S.A. § 941, the uninsured motorist statute, requires coverage in this case. In support of his position, plaintiff cites other jurisdictions that have characterized mishaps as "accidents" under uninsured motorist provisions merely because they were unforeseen by the victim. See *Government Employees Ins. Co. v. Novak*, 453 So. 2d 1116, 1118 (Fla. 1984) (accident where pedestrian shot insured driver, removed her from car, got in, and drove away); *General Accident Ins. Co. of America v. Olivier*, 574 A.2d 1240, 1242 (R.I. 1990) (accident where uninsured motorist shot and killed insured motorist after auto collision). We do not find these decisions persuasive. The word "accident" ordinarily implies lack of intent by the responsible parties, rather than the victim's lack of foresight.

The purpose of § 941 is to "compensate accident victims for damages caused by uninsured motorists who are found or are conceded to have been *negligent*." *Bradley v. H.A. Manosh Corp.*, 157 Vt. 477, 484, 601 A.2d 978, 983 (1991) (emphasis added). The uninsured motorist provisions are intended to put a covered person in the same position as if the uninsured motorist had been insured. *Id.* A tortfeasor's insurance does not typically cover intentional acts. We note that plain-

tiff's own insurance, in this case, explicitly excludes coverage of any person "[w]ho intentionally causes bodily harm or property damage." Cf. *McCarthy*, 224 N.Y.S.2d at 916; *Murray*, 215 N.E.2d at 415. Imposing coverage for *intentional* damage by other motorists would expand 23 V.S.A. § 941 beyond its intended scope.

As we hold that Darrow's intentionally throwing the tire iron was not an "accident" under plaintiff's uninsured motorist provision, we do not consider whether Darrow's liability arose out of the ownership, maintenance, or use of the uninsured motor vehicle.

*Affirmed.*