Herbert I. **CORKIN**
and
Alvan R. **Corkin**, Executors under the
Will of Joseph Z. **Corkin**, Plaintiffs,

v.

The **UNITED STATES LIFE INSUR-
ANCE COMPANY**, Defendant.

**Civ. A. No. 62-777.**

United States District Court
D. Massachusetts.

May 18, 1966.

Louis Karp, Karp Gardner Karp &
Walsh, Boston, Mass., for plaintiffs.

John Kimball, Jr., Hale & Dorr, Boston, Mass., for defendant.

OPINION

SWEENEY, District Judge.

The plaintiffs brought this suit in the Superior Court of Suffolk County to recover upon a policy of insurance issued by the defendant. The defendant removed to this court pursuant to the provisions of 28 U.S.C. §§ 1441 and 1332.

The plaintiffs allege that they are the beneficiaries of a contract of insurance issued to Development Corporation of America under which the defendant agreed to pay a specified sum of money upon receiving proof of death of an insured employee, and that although the defendant received proof of the death of Joseph Z. Corkin, an insured employee, it refuses to pay. The defendant denies that Joseph Z. Corkin was an employee of Development and that he was an employee within the meaning of the policy. The case was tried to the court sitting without a jury.

Findings of Fact

The group life insurance policy in issue insures the employees of Development, and Kellogg Lumber and Supply of Utica, Inc., an "Associated Company," and defines eligible employees as employees who have "completed one day of continuous active service on the Effective Date of the policy * * * PROVIDED, HOWEVER, THAT THE FOLLOWING CLASSES OF EMPLOYEES ARE EXCLUDED FROM INSURANCE

UNDER THIS POLICY: Employees who do not regularly work at least 30 hours per week as employees of the employer." The Insurance Schedule sets up two ' classifications of insureds—"officers" who are insured for $30,000 and "all other employees" as to whom coverage is $10,000. The policy became effective on January 2, 1962.

The plaintiffs, Alvan and Herbert Corkin and their brother, the decedent, Joseph Corkin were, during 1961 and 1962, engaged in the development of real estate properties throughout the country. They bought land in their own names, or in the name of corporations of which they owned the entire stock. Development Corporation of America developed and managed these properties. It also was a closed Corkin family enterprise although the evidence is not clear as to the division of stock ownership among the brothers. Joseph, the decedent was, at all relevant times, chairman of the board of directors and, apparently by tacit agreement, general manager; Herbert was treasurer and Alvan, president. The parties have stipulated that Joseph was never on the payroll of Development or Kellogg and that he never received any wages or salary from either corporation. It is further undisputed that, except for the Corkin brothers, Development had no "employees," that is, it had no one on its payroll; and whatever it did, it did through the Corkins. Development, moreover, had no contracts for management services either with the Corkin brothers as owners of the real estate or their corporations, nor did Development receive any compensation for its services. There was testimony that Development also operated and/or managed two properties in which the Corkins only owned a 50% interest; but it had no written contracts with these projects or their owners either, nor did it receive any compensation for its services to them.

Joseph Corkin became sick in the summer of 1961 and his illnes was diagnosed as terminal cancer of the stomach. He died on January 5, 1962; but he had been able to carry on his business and engage in more or less his usual business affairs almost until the time of his death. In the view I take of this case, that the decedent was not an employee of Development, I find it unnecessary to determine whether he in fact "completed one day of continuous active service on" January 2, 1962, the effective date of the policy.

■■ An employee, in general, is one who in his work is subject to the control of another, his employer, Deecy Products Co. v. Welch, 124 F.2d 592, 139 A.L.R. 916 (1st Cir. 1941), Texas Co. v. Higgins, 118 F.2d 636 (2d Cir. 1941). But the term "employee" is not inflexible and its meaning does, to some extent, depend upon the context and circumstances in which it is used, Muise v. Century Indemnity Co., 319 Mass. 172, 174, 65 N.E.2d 98 (1946). The question posed in this case is whether on the facts adduced at the trial the word "employee" is sufficiently flexible to encompass Joseph Corkin. There is no doubt, in view of the two classifications of insured employees, that the parties intended to include officers; and there is also no doubt that the insured group was intended to include only persons who spent a substantial amount of their working time, specifically at least 30 hours per week, on the business of the named employers. There was testimony that Joseph Corkin regularly worked 50–60 hours per week for Development; but there were, first of all, none of the indicia of an employment relationship and, secondly, nearly all the evidence indicates that Development was nothing more than a corporate device for handling Corkin properties. Development did have a telephone number and an office which was only rarely used. Beyond that, it existed, so far as the evidence before the court shows, only on paper. It apparently had no income, no expenses, no assets, no liabilities, no employees, and no bank accounts. It is alleged to have had management contracts but, in view of the fact that it was not compensated for its services and it did not compensate

Joseph Corkin. I find it inherently unbelievable that Joseph Corkin worked for Development, rather than for the private and separate interests of himself and his brothers.

### Conclusions of Law

Joseph Corkin was not an employee of Development Corporation of America and the plaintiffs failed to prove by a preponderance of the evidence that Joseph Corkin regularly worked "at least 30 hours per week as an employee of" Development Corporation of America.

Accordingly, judgment may be entered for the defendant.

█ After the trial of this case, the plaintiffs requested permission to reopen the case to offer evidence of the stock ownership of Joseph Z. Corkin in Development and to rebut certain evidence of the defendant on this issue. In the view that I have taken of this case, I did not consider Joseph Corkin's stock ownership to be a decisive fact. The request to reopen is therefore denied.